109 A.2d 29 (1954)
H. Albert YOUNG, Attorney General of the State of Delaware, Plaintiff,
v.
NATIONAL ASSOCIATION FOR ADVANCEMENT OF WHITE PEOPLE, Inc., a corporation of the State of Delaware, Defendant.
Court of Chancery of Delaware, Kent County.
November 8, 1954.
H. Albert Young, Atty. Gen. of the State of Delaware, for plaintiff.
Everett F. Warrington and Daniel J. Layton, Jr., Georgetown, for defendant.
MARVEL, Vice Chancellor.
Defendant was organized as a non-profit corporation under the laws of Delaware on December 14, 1953, and its principal office in Delaware is in Dover. Section 101, Title 8, Delaware Code, permits the organization of a corporation "* * * for the transaction of any lawful business, or to promote or conduct any legitimate objects or purposes * * *" subject to certain limitations not here relevant. The avowed purposes of the corporate defendant set *30 forth in its charter are to protect constitutional rights and maintain American social customs; to study social relations between races in the United States and to formulate programs designed to benefit communities by insuring stable property values through the protection of "areas occupied by certain races against encroachment" by other races.
The Attorney General contends that since September 26, 1954, the defendant corporation has abused the corporate franchise granted it by the State of Delaware by fomenting racial tension and hatred; by intimidating Delaware school boards, causing boycotts designed to bring about the closing of Delaware public schools, promoting meetings calculated to disturb the peace and incite to riot and by encouraging parents of white children to keep their children out of school in violation of the Delaware school laws. Defendant's answer denies these allegations, but admits allegations to the effect that it has solicited memberships, collected dues and expended corporate funds.
Action is brought under § 283, Title 8, Delaware Code, enacted under constitutional authority,[1] which gives this Court jurisdiction to "* * * revoke or forfeit charters of corporations * * * for abuse, mis-use or non-use of their corporate powers, privileges or franchises."
Two motions are before the Court, defendant's motion to dismiss and plaintiff's motion for a preliminary injunction.
Defendant has moved to dismiss the complaint on the grounds that this type of action is required to be brought in the name of the State of Delaware because § 33 of Article 4 of the Constitution of Delaware, Del.C.Ann., provides that:
"The style in all process and public acts shall be THE STATE OF DELAWARE. Prosecutions shall be carried on in the name of the State."
This action is not a prosecution, and the civil complaint filed by the Attorney General is not in my opinion "process",[2] State v. Vandegrift, 3 W.W.Harr. 154, 132 A. 858; May v. State, 3 W.W.Harr. 160, 132 A. 861, 862. Under specific statutory authority the Attorney General may proceed against a corporation by complaint upon his own motion. Were this a criminal action, it would not have to be captioned in the name of the State if carried on by authority of the State, State v. Vandegrift, supra. In the May case, Judge Rodney in referring to the second sentence of the constitutional provision stated:
"The provision seeks to make clear the source of the sovereign power of prosecutions rather than to require that such sovereign power be described with meticulous particularity."
Complaints[3] captioned in the name of the Attorney General under § 283 on the relation of proper parties were filed in this Court in Southerland v. Decimo Club, Inc., 16 Del.Ch. 183, 142 A. 786, Satterthwaite v. Eastern Bankers Corp., 17 Del.Ch. 310, 154 A. 475 and Morford v. Trustees of Middletown Academy, supra [25 Del.Ch. 58, 13 A.2d 173]. In these cases, no objection was raised to the procedure authorized by the Legislature and in my opinion none could have been successfully advanced. In the case last cited a demurrer to the complaint was sustained on the ground that the Attorney General, who alone, in the words of the Court, "* * * may properly be a complainant in a suit to forfeit a charter * * *", had not signed or verified *31 the bill. Defendant's motion to dismiss is denied.
Do the facts now before the Court disclose such threatened abuse of corporate privileges and franchises as to require preliminary injunctive relief for the State?
Plaintiff seeks a preliminary injunction restraining defendant, its officers, agents and employees from the further exercise of its corporate powers, privileges and franchises; from soliciting or receiving gifts, dues or money from any sources, from expending any corporate moneys or from otherwise carrying on "* * * any activity on behalf of or in the name of said corporation." This relief is sought preliminary to a hearing on the right of the State to revoke defendant's charter and to have a receiver appointed to wind up its business.
There is no question but that this Court will forfeit a corporate charter where the abuse of its privileges and franchises is clear, Southerland v. Decimo Club, Inc., supra. It is also apparent that the granting of the present motion, along the terms requested, would require the Court to conclude that there is no real defense to the action. The requested injunction would temporarily put the corporate defendant in a state of suspended animation and deprive it of its corporate privileges as completely as would a death sentence after final hearing.
A motion for a preliminary injunction is disposed of on the facts as they appear from the pleadings and affidavits, Sandler v. Schenley Industries, Inc., 32 Del. Ch. 46, 79 A.2d 606.
In People v. North River Sugar Refining Co., 121 N.Y. 582, 24 N.E. 834, 835, 9 L. R.A. 33, a proceeding similar to this, the Court of Appeals of New York stated:
"Two questions, therefore, open before us: First, has the defendant corporation exceeded or abused its powers? and, second, does that excess or abuse threaten or harm the public welfare?"
Generally, however, courts, in forfeiture proceedings, perhaps reluctant to take a subjective position on what ultra vires activities injure the general welfare or contravene public policy, look for and find a sustained course of fraud, immorality or violations of statutory law before deciding that there has been an abuse of charter privileges. In Black v. Contract Purchase Corporation, 327 Mich. 636, 42 N.W.2d 768, the charge (which was not sustained) was that the corporate defendant had violated laws having to do with the loaning of money, and the granting of insurance. In the Delaware case of Southerland v. Decimo Club, Inc., supra, forfeiture was ordered because the Chancellor was convinced that the corporate defendant had sought to circumvent the provisions of the Delaware corporation and revenue statutes by organizing as a non-profit corporation when in fact the making of profits was a conspicuous object of its existence. In People v. White Circle League, 408 Ill. 564, 97 N.E.2d 811, a quo warranto proceeding, the holding of the Court was that the corporation had exercised powers not conferred by law; the complaint, however, charged violation of an Illinois criminal libel statute. In State ex rel. Voyles v. French Lick Springs Hotel Co., 42 Ind.App. 282, 82 N.E. 801, 85 N.E. 724, a corporate charter was forfeited because the corporate defendant operated a gambling house.
In the present case it is not denied that the activities of the corporate defendant have been directed towards maintaining and even creating legal and social barriers between the races of this country, but this Court should be hesitant to pass judgment on controversial words and actions.
On September 26, Bryant W. Bowles, president of the defendant corporation, came to Delaware and explained the purposes of the defendant corporation to a meeting of citizens at Harrington Airport. Meetings were also held under the auspices of the corporate defendant on following days during the balance of the month. On September 27, Milford High School reopened, protests against the admission of *32 eleven Negro students having led to the closing of the School on September 20th. On September 27, 28 and 29 approximately a third of the student body attended school, the number in attendance increasing slightly on the 28th and 29th.
Defendant through affidavits of its president and agents points out that the first meeting sponsored by the corporation in Delaware was not held until some time after protests against partial integration at the Milford High School had occurred. Defendant also claims that the corporate purpose in soliciting and organizing members in the State of Delaware was first to prevent violence by regulating anti-segregation sentiment in Delaware; a long-term purpose of the corporation being to prevent the "mixing" of races and to nullify in some manner the full application of the equal protection of the laws to public school education required by the decision of the Supreme Court in Brown v. Board of Education, etc., 347 U.S. 483, 74 S.Ct. 686. In support of this long-term project defendant has circulated pamphlets and periodicals opposing the abolition of legal and social barriers between the white and Negro races.
Plaintiff concedes that officers and agents of the corporate defendant, as individuals, have constitutional rights peaceably to assemble as well as the right to freedom of speech but contends that the defendant corporation should not be allowed to insulate the individual members of the corporation against personal liability. Where criminal action is taken against individuals under an appropriate statute, see Beauharnais v. People of State of Illinois, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919, the protection of freedoms guaranteed by the bill of rights is immediately a matter for judicial concern. It may be that the suppression of corporate activities of a social and political nature tends to suppress liberties when such activities do not constitute a "clear and present danger", or do not violate a criminal libel statute, compare Application of Bohlinger (In re International Workers Order, Inc.), 199 Misc. 941, 106 N.Y.S.2d 953 and People v. White Circle League, supra.
Do the activities of the corporate defendant in Delaware threaten to violate the laws of the State or constitute such fraudulent abuse of corporate franchises as to require any action by this Court now in order to prevent irreparable injury to the State?
Under the present record it is clear that the defendant urged the use of boycott and participated actively in an effort to bring about violation of the laws of Delaware having to do with compulsory school attendance, but it further appears that such activities, having accomplished their objective, no longer constitute a threat to school attendance. While it is conceded that defendant receives dues and contributions from members, there is no showing of clear and convincing fraud in the handling of such moneys.
Defendant's periodic publications do not appear to violate a statute as was the case in People v. White Circle League, supra, and there is nothing in the record to support a charge of threatened violation of the laws concerning sedition or riot. There is no imminent threat of activities designed to bring about violations of the State election laws.
I am not convinced at this stage of the proceedings that defendant's activities, though in excess of the powers granted in its charter and designed to divide rather than to unify the races of this country, constitute such a threat of irreparable injury to the welfare of the State as to require any preliminary injunctive relief.
Defendant's motion to dismiss and plaintiff's motion for injunctive relief are denied.
Orders on notice.
NOTES
[1] The power to forfeit corporate charters existed at common law and is not a creation of the Delaware Constitution. Morford v. Trustees of Middletown Academy, 25 Del.Ch. 58, 13 A.2d 168.
[2] Process is generally considered the means of asserting jurisdiction against a defendant by compelling appearance and answer, Webb Packing Co. v. Harmon, 9 W.W.Harr. 22, 196 A. 158.
[3] Section 283 of Title 8 Delaware Code was revised by the Code Commission by substituting the word "complaint" for the words "bill in equity or by information in the nature of a bill in equity" found in § 2100 of the 1935 Code.